IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA PULVER | : | CIVIL ACTION |
| v. | : | |
| MAXON CORPORATION et al. | : | NO. 09-2077 |

**MEMORANDUM RE: SUMMARY JUDGMENT MOTIONS**

**Baylson, J.**                                                                                    **August 22, 2011**

The Court held oral argument on August 9, 2011, at which time the Court posed a number of questions and issues to counsel. The Court questioned Defendant Maxon's counsel on her theories on the basis of its Motion for Summary Judgment.

On the claims of the Plaintiff that there was a violation by Maxon of its duty to warn and breach of express and implied warranties, the record shows that Maxon considered it essential for the purchaser of a Maxon mixer to also use a Maxon line burner with the gas mixer, but never specifically advised its customers of that, at least in any written document. The record is also undisputed that Arcelor Mittal ("Arcelor") never knew of this policy, and although Arcelor had purchased a number of Maxon gas mixers, it did not purchase any Maxon line burners. In fact, the record appears to be undisputed that Arcelor fabricated line burners, but the record is disputed as to who fabricated the line burner involved in this case. This action is discussed further below in connection with Cross Defendant Steveco's Motion for Summary Judgment.

At argument, Maxon's counsel said the principal issue is causation, and argued that under Pennsylvania law, Maxon, as a manufacturer of one component of a piece of operating machinery, cannot be liable for malfunction of the final machinery. Although Maxon has

-1-

correctly stated this fundamental principle of Pennsylvania law, Maxon has not cited any cases where the facts are as those presented by Plaintiff.

This Court's duty is to consider the facts in the light most favorable to the Plaintiff. Plaintiff asserts the only two components of the operating machinery involved in this case were the Maxon gas mixer and the line burner itself (plus a feed for gas and electricity to power the unit). Thus, the Court inquired whether Maxon could cite any case applying Pennsylvania law where summary judgment was granted on the grounds of no causation where, basically, only two components, one of which was made by the defendant, formed the machinery which arguably caused the plaintiff's injury. No such case has been cited.

Maxon also argued that the undisputed facts showed that causation was due to a number of other facts not related to the gas mixer or the line burner, such as the size of the flame coming out of the line burner, the proximity of the flame to the Plaintiff, and the fact that the Plaintiff was wearing clothes that were soaked in solvent. At the argument, the Plaintiff disputed that the facts would be so simple and said that causation could be tied to Maxon. Plaintiff's counsel indicated that a recent witness had been located who was an eyewitness to the incident, and Plaintiff has recently filed his sworn declaration (ECF No. 103), stating that the deceased's coveralls were covered in grease and the flame of the line burner was "at least one foot in height." These facts present a causation issue for the jury.

There was brief argument on Cross Defendant Steveco's Motion for Summary Judgment. Steveco had workers at the Arcelor plant and was involved in fabricating some equipment. Steveco asserts there is no evidence to show that Steveco fabricated the line burner involved in this injury, and Maxon argued that there was circumstantial evidence from which a jury could so

conclude. The Court posed the question as to whether the third-party claim against Steveco should be stayed and bifurcated so that the trial would proceed only against Maxon at this time.

Steveco relies on Judge Padova's decision in Martinez v. Skirmish, U.S.A., Inc., Civ. A. No. 07-5003, 2009 WL 1437624 (E.D. Pa. May 21, 2009). The facts in Martinez involved a plaintiff who alleged he was injured when he was hit in the eye with a paintball at a Skirmish, U.S.A. facility. Skirmish filed third-party complaints for contribution and indemnity against Tippmann Sports, LLC ("Tippmann"), a manufacturer of paintball guns, and also against manufacturers of paintballs and goggles. Id. at *1. Tippman moved for summary judgment on the contribution and indemnity claims, "on the ground that no product that it designed, manufactured, sold or distributed has been identified as being the cause of Plaintiff's injury." Id. at *2.

Judge Padova explained that under Pennsylvania law, "Skirmish's claim for contribution and indemnity against Tippman depends on whether Tippman could be held liable for the injuries to Martinez," because "the right to contribution arises only among joint tortfeasors." Id. at *3. Judge Padova relied on the following:

> In the context of a products liability action, before liability will attach, plaintiff must establish that the injuries sustained were caused by the product of a particular manufacturer or supplier. In cases in which the allegedly defective product is not available, a plaintiff may prove identification through circumstantial evidence. The quantum of identification evidence a plaintiff must offer prior to trial in order to justify allowing the issue to be submitted to a jury is factual and, thus, case-specific.

Id. at *3-4 (quoting Stephens v. Paris Cleaners, Inc., 885 A.2d 59, 63 (Pa. Super. Ct. 2005)) (internal citations and quotation marks omitted).

In Martinez, no one identified the manufacturer of the gun that caused the plaintiff's

injury. Id. at *4. The Court "[v]iew[ed] the evidence in the light most favorable to Skirmish" and found "that the majority of the paintball guns in use on the field where Martinez was injured were manufactured by Tippmann." Id. However, "[e]vidence that a substantial percentage of the paintball guns that could have been used to injure Martinez were manufactured by Tippmann is not sufficient to create a jury issue regarding the identity or manufacturer of the specific paintball gun used to shoot Martinez." Id. Because the evidence did not unequivocally identify Tippmann as the manufacturer of the gun, Judge Padova granted summary judgment for Tippmann on Skirmish's claim for contribution and indemnity. Id.

Other decisions applying Pennsylvania products liability law have similarly granted summary judgment for a defendant who was not clearly identified as the manufacturer or supplier that caused the plaintiff's alleged injury (outside of the context of contribution and indemnity claims). See Martinez v. Skirmish, U.S.A., Inc., No. 07-5003, 2009 WL 1559828 (E.D. Pa. June 2, 2009) (Padova, J.), reconsideration denied, 2009 WL 1911417 (E.D. Pa. July 1, 2009) (granting summary judgment for defendant goggles manufacturer, because the "[e]vidence that a substantial percentage of the goggles available for rental to [plaintiff] may have had straps manufactured, designed, distributed, supplied or sold by Procaps L.P. would not be sufficient to create a jury issue with respect to the identity of the manufacturer or supplier of the straps or goggles"); Stephens v. Paris Cleaners, Inc., 885 A.2d 59, 64 (Pa. Super. Ct. 2005) (affirming summary judgment for manufacturer in case where plaintiff's uniform caught fire, and the evidence did not identify which of three manufacturers whose uniforms were supplied to plant workers was the manufacturer of the uniform that plaintiff wore); Santarelli v. BP America, 913 F. Supp. 324, 328 (M.D. Pa. 1996) (McClure, J.) (granting summary judgment on products

liability claims against salmon supplier where there was no sample of the alleged contaminated fish to test, making it "impossible to narrow the search any further or to identify with any degree of certainty which of the three wholesalers supplied the salmon consumed by the plaintiff" and thus "impossible for plaintiff to establish liability on the part of all or any one of the three suppliers"); DeWeese v. Anchor Hocking Consumer & Indus. Prods. Grp., 628 A.2d 421, 424 (Pa. Super. Ct. 1993) (affirming summary judgment for defendant Anchor Hocking where plaintiff, a busboy who was injured by a broken pitcher, submitted no evidence that Anchor Hocking was the manufacturer of the pitcher that caused his injury, and the evidence in the light most favorable to the plaintiff showed only that the club had purchased several Anchor Hocking pitchers).

In this case, Plaintiff dismissed her claims against Steveco because the evidence did not conclusively identify Steveco as the manufacturer of the line burner.  Maxon contends that there is a genuine dispute of material fact regarding whether "the line burner that ignited Pulver's pant leg has no identifying marks that indicate when, where or by whom it was manufactured," further claiming: "The line burner can be identified as on[e] made by Steveco."  Maxon's Resp. ¶ 26.  However, the evidence that Maxon cites--the Taylor deposition, the Waterman deposition, and the Maxon invoices--taken in the light most favorable to Maxon, does not support Maxon's contention.  Charles Taylor, a Maxon employee, identified a gas mixer as a Maxon mixer, but did not identify any line burner fabricated by Steveco.  Taylor Dep. 19:18-19.  Likewise, Paul Waterman testified that he could identify a burner manufactured or sold by Maxon by its bell-shaped feature, but that testimony has nothing to do with identifying Steveco as a manufacturer of the line burner.  Waterman Dep. 24:22-25:5, 25:12-15.  Additionally, the Maxon invoices

show that Maxon shipped its "ventite insprtr" mixer to ISG Conshohocken in 2005 and to ISG Plate LLC in 2006. Ex. H to Cross Claim Def.'s Steveco Motion. Maxon suggests that because Maxon mixers were purchased during the period when Steveco laborers worked in the pipe shop at Arcelor, from 2002 to 2008, that is evidence that Steveco fabricated the line burner. However, Maxon had not cited evidence showing that the line burner that was a component in Pulver's injury was fabricated between 2002 and 2008.

Therefore, in the absence of evidence identifying Steveco as the manufacturer of the line burner that caused injury to Pulver, Steveco cannot be held liable on Maxon's cross-claims for indemnity and contribution.

The Court has entered an Order (ECF No. 105) denying Defendants Maxon and Honeywell's Motion for Summary Judgment, and granting Cross Defendant Steveco's Motion for Summary Judgment.

BY THE COURT:

s/Lawrence F. Stengel for
Michael M. Baylson

Date: 8/22/11

Michael M. Baylson, U.S.D.J.

O:\CIVIL 09-10\09-2077 Pulver\Pulver - Mem Draft 8-18-11.wpd